NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____

ANTHONY FONTANEZ,

    Plaintiff.

v.

COMMISSIONER VICTORIA L. KUHN, et al.,

    Defendants.
_____

: Civ. No. 22-3046 (RMB-MJS)
:
: **OPINION**

RENÉE MARIE BUMB, United States District Judge

    Plaintiff Anthony Fontanez, a prisoner incarcerated in East Jersey State Prison in Rahway, New Jersey, filed this civil suit under 42 U.S.C. § 1983 and the Americans with Disabilities Act, alleging that in October 2020, correctional officers at South Woods State Prison used excessive force against him and engaged in other civil rights violations related to this incident. Plaintiff submitted an IFP application (IFP App., Docket Nos. 1-2 and 1-4) that establishes his financial eligibility to proceed without prepayment of the filing fee.

**I.**    *Sua Sponte* **Dismissal**

    When a person files a complaint and is granted IFP status, 28 U.S.C. § 1915(e)(2)(B) requires courts to review the complaint and *sua sponte* dismiss any

1

claims that are: (1) frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief against a defendant who is immune from such relief. Courts, however, must liberally construe pleadings that are filed pro se. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissal under Federal Rule of Civil Procedure 12(b)(6). *See, Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556.)

## II.  THE COMPLAINT

Plaintiff asserts federal question jurisdiction under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and jurisdiction premised on the First, Eighth and Fourteenth Amendments, which this Court construes as asserting jurisdiction under 42 U.S.C. § 1983.  The defendants named in the complaint[1] are New Jersey Department of Corrections Commissioner Victoria L. Kuhn, and the

---

[1] The spelling of the defendants' names is subject to this Court's interpretation of Plaintiff's handwritten complaint.

2

following administrators and employees at South Woods State Prison: Administrator Al Solanik, Administrator Anthony Degner, S.I.D. Investigator Ronald Tobolski, Lt. M. Poloff, Sgt. P. Betancourt, Sgt. C. Muessig, Senior Correctional Police Officer ("SCPO") G. Corson, SCPO S. Brobst, SCPO W. Gaskill, SCPO K. McMahan, SCPO M. Van Kline, SCPO N. Goswick, SCPO A. Sorrell, SCPO J. Morales, RN Hogans, RN T. Andino, K. Liborio and Dr. F. Massumove.[2] Defendants are sued in their individual and official capacities.

Plaintiff alleges the following facts in support of his claims. Plaintiff was incarcerated in South Woods State Prison on October 7, 2020. He was assigned, as an extra duty, to mop the floors in the H-2-1 foyer area. McMahan was supervising this activity. Brobst came through the area and yelled for Plaintiff to move a wet floor sign. Before Plaintiff could move the sign, Brobst ordered Plaintiff to put his hands against the wall for a pat search. Plaintiff complied. Brobst falsely accused Plaintiff of assaulting him using his shoulders. Brobst knocked Plaintiff on the ground and punched him in the head and body. Lt. M. Poloff called an emergency code. McMahan, Gaskill and Goswick responded to the code. Upon their arrival, Plaintiff did not resist, and they punched him with their fists and batons. Plaintiff was placed in mechanical restraints and escorted to a holding cell. RN Andino saw Plaintiff's injuries on his face and head but denied him a full medical assessment because he was clothed and handcuffed. Plaintiff was strip searched and left naked in

---

[2] For brevity, the Court will refer to each defendant by his/her last name only.

3

a dry cell in another building until the third shift. Plaintiff was not reevaluated for his medical complaints until two days later, after his attorney called to complain about his lack of medical treatment. Brobst fabricated an administrative charge against Plaintiff for noncompliance and assault, which was the basis to use force against Plaintiff. Defendants knew there was no camera in the area where the incident occurred.

Tobolski, in the Special Investigation Division, was assigned to investigate the incident. He placed all officers who were alleged to be involved in the excessive use of force on administrative investigative hold. Plaintiff was read his *Miranda* rights and interviewed on October 9, 2020. He told the interviewer what happened, consistent with the allegations in this complaint. On the same day, Discipline Hearing Officer Chrissy Ralph found Plaintiff guilty of the prison infraction of assault and sanctioned him with 120 days loss of comp. time and 10 days loss of recreation privileges.

On November 25, 2020, Tobolski filed allegedly false criminal charges against Plaintiff for third degree assault against Brobst, without informing the Cumberland County Prosecutor, Charles Wettstein, that there was no video of the incident, and that Plaintiff did not receive medical treatment after the incident. Plaintiff alleges that he suffered physical and mental injuries from the excessive force employed by Corson, Brobst, Gaskill, McMahan, Van Kline, Goswick, Sorrell and Morales, and that he was falsely prosecuted for assaulting Brobst. He seeks damages, declaratory relief, and any other relief to which he is entitled.

### III. DISCUSSION

#### A. Americans with Disabilities Act ("ADA") Claims

Plaintiff alleges violation of the ADA by failing to provide him with medical and mental health treatment after he was alleged beaten by the officers. The elements of a claim under Title II of the ADA are that "(1) [the plaintiff] is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Pierce v. Pitkins*, 520 F. App'x 64, 67 (3d Cir. 2013) (citing 42 U.S.C. § 12132.) Plaintiff has not alleged that he has a disability, let alone that he was denied medical or mental health treatment by reason of his disability. *See Brown v. Pennsylvania Dep't of Corr.*, 290 F. App'x 463, 467 (3d Cir. 2008) (ignoring a prisoner's disabilities does not establish discriminatory animus based on those disabilities.) Therefore, Plaintiff's ADA claims will be dismissed without prejudice.

#### B. Eighth Amendment Excessive Force Claims

Accepting Plaintiff's allegations as true, his Eighth Amendment excessive force claims may proceed against Brobst, McMahan, Gaskill, and Goswick. Plaintiff also alleges Corson, Muessig, Betancourt, Van Kline, Sorrell, Morales, and Poloff used excessive force against him, but unlike the above Defendants, Plaintiff does not describe any of the involvement of these officers in the incident, apart from the allegation that Poloff called the emergency code. In the absence of allegations

describing how these defendants used force maliciously, without a good faith effort to maintain or restore discipline, Plaintiff fails to state a claim against them. *Iqbal*, 556 U.S. at 678 ("threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Wilkins v. Gaddy*, 559 U.S. 34, 40 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (to state an Eighth Amendment excessive force claim, a plaintiff must allege facts indicating force was used maliciously and sadistically, "rather than as part of 'a good-faith effort to maintain or restore discipline.'")) The excessive force claims against Corson, Muessig, Betancourt, Van Kline, Sorrell, Morales, and Poloff will be dismissed without prejudice.

C.   **Eighth Amendment Failure to Protect Claims**

Liberally construing the *pro se* complaint, Plaintiff alleges that Commissioner Kuhn and Administrators Solanik and Degner are liable for failing to protect him from excessive force, because they were aware there were no cameras in the area of the prison where the alleged excessive force occurred.  To state an Eighth Amendment claim for failure to "prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Further, a plaintiff must show the defendant was deliberately indifferent to inmate health or safety. *Id.* To make this showing, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at

6

837. The allegation that these defendants knew there were no cameras in the area where Plaintiff was beaten is insufficient to establish their knowledge that this posed a substantial risk of serious harm. Plaintiff has not alleged that excessive force against prisoners was so frequent in this area that the defendants must have been aware that cameras were necessary to deter corrections officers from continuing the alleged misuse of the area to hide their misconduct. These claims will be dismissed without prejudice.[3]

### D. Eighth Amendment Inadequate Medical/Mental Health Care Claims

"An incarcerated plaintiff asserting a § 1983 claim for inadequate medical care under the Eighth Amendment must show the existence of a serious medical need and that facility staff demonstrated deliberate indifference to that medical need." *Romero v. Ahsan*, 827 F. App'x 222, 226 (3d Cir. 2020). "Serious medical needs include those that have been diagnosed by a physician as requiring treatment…." *Andrews v. Camden Cnty.*, 95 F. Supp. 2d 217, 227 (D.N.J. 2000) (citing *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987), *cert. denied*, 486 U.S. 1006 (1988)). The Third Circuit has found deliberate indifference

> in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays

---

[3] This might also be construed as a supervisory liability claim; that the administrators are liable for the excessive force used by their subordinates because they failed to install cameras. The same pleading deficiency, that it was so frequent of an occurrence as to constitute a custom or practice that correctional officers used excessive force on prisoners in the H-2-1 foyer area, precludes this claim from proceeding. *See Santiago v. Warminster Tp.*, 629 F.3d 121, 129 n. 5 (3d Cir. 2010) (describing the two recognized theories of supervisory liability under § 1983).

>necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment.

*Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

Plaintiff alleges that he suffered pain and injuries from being punched and beaten with batons on October 7, 2020, and that RN Andino saw his visible injuries but refused to provide a full medical assessment or treatment. This Eighth Amendment claim may proceed against Andino.

Plaintiff alleges RN Hogan denied him medical care based on the instructions of the correctional officers. He further alleges that mental health providers Liborio and Dr. Massumove knew that he was suffering a mental health crisis after the beating, but they allowed the correctional officers to make decisions about Plaintiff's mental health treatment, which this Court construes as alleging that the correctional officers instructed Liborio and Dr. Massumove not to provide treatment. Plaintiff alleges he received medical treatment on December 9, 2020, only after his attorney contacted the prison. Plaintiff's Eighth Amendment inadequate medical and mental health care claims may proceed against Hogan, Liborio, Massumove and the correctional officers alleged to have prevented Plaintiff from receiving medical or mental health treatment, including Poloff, Betancourt, Muessig, Corson, Brobst, Gaskill, McMahan, Van Kline, Goswick, Sorrell and Morales.

Plaintiff has failed to allege the administrators' knowledge and acquiescence in the failure to treat Plaintiff's injuries and mental health on October 7, 2020, nor has Plaintiff alleged a specific supervisory policy or custom that caused Plaintiff to be

8

denied immediate medical or mental health treatment after he was beaten. *Santiago*, 629 F.3d at 129 n. 5. Therefore, the supervisory liability claims against Kuhn, Solanik and Degner are dismissed without prejudice.

    E.    **Eighth Amendment Strip Search Claim and Conditions of Confinement Claim**

The Eighth Amendment ban on cruel and unusual punishments governs a convicted prisoner's claim that a strip search was carried out to intentionally humiliate or abuse him/her. *Graham v. Connor*, 490 U.S. 386, 394 (1989) (Eighth Amendment governs physical abuse of prisoner) (citing *Whitley v. Albers*, 475 U.S. 312, 318–326 (1986) (excessive force to subdue convicted prisoner analyzed under an Eighth Amendment standard); *Florence v. Board of Chosen Freeholders of County of Burlington*, 566 U.S. 318, 339 (2012) (constitutional rights may be implicated where a strip search is carried out in such a way as to intentionally humiliate or abuse a prisoner) (citing *Hudson v. Palmer*, 468 U.S. 517, 528 (1984) (noting a calculated harassment unrelated to prison needs is protected by the ban on cruel and unusual punishments)). The Eighth Amendment also governs a prisoner's conditions of confinement and protects prisoners against deprivations of basic necessities, such as adequate food, clothing, shelter, medical care and reasonable steps to guarantee their safety. *Farmer*, 511 U.S. at 832 (citations omitted).

Plaintiff has not alleged that there was no prison policy based on legitimate security measures that required his strip search after he was escorted to a different area of the prison, nor has he alleged which defendants were personally involved in

intentionally humiliating him during the strip search. Regarding his conditions of confinement, Plaintiff has not alleged how long he was left naked before the third shift officer brought him clothes. More facts are necessary to state these Eighth Amendment claims. These claim, as to all defendants, will be dismissed without prejudice.

### F. Failure to Perform Adequate Investigation Claims

Plaintiff alleges Tobolski performed a sham investigation into Plaintiff's excessive force claim, and he seeks to hold other supervisory defendants liable for failing to respond to his grievances about excessive force, inadequate medical and mental health treatment, and false charges. These claims fail because "there is no constitutional right to the investigation or prosecution of another." *Sanders v. Downs*, 420 F. App'x 175, 180 (3d Cir. 2011) (per curiam); and there is no constitutional right to prison grievance procedures. *Heleva v. Kramer*, 214 F. App'x 244, 247 (3d Cir. 2007) (citing e.g., *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir.2001) (collecting cases)). These claims will be dismissed with prejudice as to all defendants.

### G. Fabrication of Evidence and Malicious Prosecution Claims

Plaintiff alleges Tobolski fabricated evidence against him to bring assault charges in Cumberland County. A necessary element of a due process claim for malicious prosecution is that the plaintiff was deprived of his liberty as a consequence of the criminal charges. *Gray v. Wittman*, 839 F. App'x 669, 671 (3d Cir. 2021). Plaintiff was a convicted state prisoner incarcerated in a state prison when the assault charges were brought by Tobolski. Because Plaintiff was not deprived of

10

his liberty as a result of the charges, he fails to state a due process claim for malicious prosecution. *Gray,* 839 F. App'x at 671 (citing *Curry v. Yachera*, 835 F.3d 373, 380 (3d Cir. 2016)). Moreover, even if Plaintiff had been deprived of his liberty as a result of these charges, Plaintiff has not alleged that the criminal proceeding ended in his favor, another necessary element of a malicious prosecution claim. *Id.* Thus, the complaint fails to state a malicious prosecution claim.

There is a stand-alone Fourth Amendment claim for use of fabricated evidence. *Halsey v. Pfeiffer*, 750 F.3d 273, 295 (3d Cir. 2014). Disputed evidence, however, is not fabricated evidence. *Id.* A claim of fabrication is unsupported "in the absence of persuasive evidence supporting a conclusion that the proponents of the evidence were aware that "the evidence was incorrect" and "offered the evidence in bad faith." *Id.* Plaintiff's denial of the assault charge and the fact that there was no video footage of the alleged assault are insufficient to show that Tobolski knew the assault charge was false, and that he fabricated evidence to support it. The fabrication of evidence claim will be dismissed without prejudice.

### H. First Amendment Retaliation Claims

To state a claim for relief from retaliation in violation of the First Amendment, a plaintiff must allege facts supporting the following elements:

> (1) "that the conduct which led to the alleged retaliation was constitutionally protected"; (2) "that he suffered some 'adverse action' at the hands of the prison officials"; and (3) "a causal link between the exercise of his constitutional rights and the adverse action taken against him," or more specifically, "that his constitutionally protected conduct was 'a substantial or motivating factor' in the decision" to

>   take that action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).

*Oliver v. Roquet*, 858 F.3d 180, 190 (3d Cir. 2017).

Plaintiff alleges Solanik, Degner, Poloff, Betancourt and Corson retaliated based on Plaintiff's "freedom of speech and freedom of expression in his confinement at South Woods State Prison which [led] to excessive force on him." Plaintiff made virtually the same allegation against Brobst, Gaskill, McMahan, Van Kline, Goswick, A. Sorrell and J. Morales. These allegations are too vague for this Court to determine whether the defendants took an adverse action against Plaintiff that was substantially motivated by his free exercise of speech or expression. Therefore, these claims will be dismissed without prejudice. Similarly, Plaintiff alleges Tobolski retaliated "for freedom of speech, freedom of expression without threat safety and security of South Woods State Prison." This too lacks sufficient information to state a claim and will be dismissed without prejudice.

Plaintiff has also alleged Brobst, Poloff, Betancourt, Corson and Muessig filed a false prison disciplinary report to cover up the use of excessive force. The Court construes this as a retaliation claim; that these defendants allegedly made a false accusation of assault, in the context of a prison disciplinary action, because Plaintiff had alleged Brobst and others used excessive force against him. *See Mack v. Warden Loretto FCI*, 839 F.3d 286, 298 (3d Cir. 2016) (oral grievance concerning prohibited conduct by prison staff, when made by a prisoner in a reasonable manner, is

12

protected under the First Amendment right to petition for grievances). This claim may proceed against Brobst, Poloff, Betancourt, Corson and Muessig.

Likewise, this Court construes Plaintiff's claim, that Corson, Brobst, Gaskill, McMahan, Van Kline, Goswick, Sorrell and Morales falsely reported to Tobolski that Plaintiff had assaulted Brobst, was out of retaliation for Plaintiff reporting their use of excessive force against them, and that this led to Tobolski filing criminal charges against Plaintiff. These claims may also proceed.

## I.  Fourteenth Amendment Equal Protection Claims

By refusing to provide him with medical and mental health treatment after he was allegedly beaten by Brobst and other defendants, Plaintiff alleges Hogan, Andino, Liborio, Massumove, Poloff, Betancourt, Corson, Muessig, Goswick, Gaskill, Van Kline, Brobst and McMahan violated his right to equal protection under the law because other similarly situated prisoners were treated differently. "[T]o state a claim" of "class of one" equal protection violation, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). Whether there was a rational basis to treat Plaintiff differently than other inmates who were similarly situated is a distinct element that must be alleged to state a claim. Plaintiff has not attempted to explain why there was no rational basis to delay his medical and mental health treatment, only that it was delayed or denied based on the correctional officers' instructions. It is unclear from the complaint whether the

13

correctional officers' instructions not to immediately treat Plaintiff lacked a rational basis. These equal protection claims will be dismissed without prejudice, as will the related supervisory liability claims against Defendants Kuhn, Solanik and Degner.

## IV. CONCLUSION

For the reasons stated above, the Court will grant Plaintiff's IFP application and proceed the complaint in part and dismiss it in part.

An appropriate Order follows.

**DATE:** <u>November 16, 2022</u>          <u>s/Renée Marie Bumb</u>
                                              RENÉE MARIE BUMB
                                              United States District Judge